UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| LARRY WARREN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:22-cv-00661-TWP-MJD |
| | ) | |
| WEXFORD OF INDIANA, LLC., | ) | |
| M.D. MARITAL KNIESER, | ) | |
| AMBER, | ) | |
| LISA GIBSON, | ) | |
| SHERI WILSON, | ) | |
| DUSHAN ZATECKY, | ) | |
| DENNIS REAGLE, | ) | |
| AARON SMITH, | ) | |
| MCCUTCHEONS, | ) | |
| SARAH PECKHAM AMBURN, | ) | |
| | ) | |
| Defendants. | ) | |

**Order Screening Complaint and Directing Further Proceedings**

This matter is before the Court for screening of the complaint. Plaintiff Larry Warren

("Warren") is a prisoner currently incarcerated at Pendleton Correctional Facility ("Pendleton").

He filed this civil action under 42 U.S.C. § 1983 asserting that his constitutional rights were

violated for various reasons from April to September to 2020. Because the plaintiff is a

"prisoner," this Court has an obligation to screen the complaint before service on the defendants.

28 U.S.C. § 1915A(a), (c).

**I. Screening Standard**

When screening a complaint, the Court must dismiss any portion that is frivolous or

malicious, fails to state a claim for relief, or seeks monetary relief against a defendant who is

immune from such relief. 28 U.S.C. § 1915A(b). To determine whether the complaint states a

claim, the Court applies the same standard as when addressing a motion to dismiss under Federal

Rule of Civil Procedure 12(b)(6). *See Schillinger v. Kiley*, 954 F.3d 990, 993 (7th Cir. 2020). Under that standard, a complaint must include "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Court construes *pro se* complaints liberally and holds them to a "less stringent standard than formal pleadings drafted by lawyers." *Cesal v. Moats*, 851 F.3d 714, 720 (7th Cir. 2017).

## II. The Complaint

As an initial matter, the Court notes that Warren attached exhibits to his complaint. Dkt. 2-1. While the Court may consider documents attached to a complaint, it is Warren's burden to plead a short and plain statement of the claim. Fed. R. Civ. P. 8(a)(2); *Williamson v. Curran*, 714 F.3d 432, 436 (7th Cir. 2013). These exhibits appear to be evidence in support of the claims alleged in complaint. To consider the exhibits at this point would circumvent the "simple and plain statement requirement" of Rule 8(a)(2) of the Federal Rules of Civil Procedure and impose an unjustified burden on the Court. The Court will not sift through these documents and try to discern their potential relevance at the pleading stage. *Kadamovas v. Stevens*, 706 F.3d 843, 844 (7th Cir. 2013) (stating that attachments to a complaint may be stricken).

Warren names 10 defendants in his complaint: (1) Wexford of Indiana, LLC ("Wexford"), the private company that contracted with the Indiana Department of Correction ("IDOC") to provide medical care services at Pendleton; (2) Dr. Martial Knieser; (3) Nurse Amber; (4) Health Services Administrator Lisa Gibson; (5) Nurse Sheri Wilson; (6) Warden Dushan Zatecky; (7) Deputy Warden Dennis Reagle; (8) Aaron Smith; (9) Lieutenant

McCutcheons; and (10) Unit Team Manager Sarah Peckham Amburn. He seeks money damages and injunctive relief, including an injunction requiring that mold be permanently removed from Pendleton, that he be seen by a respiratory expert and a tuberculosis expert, and that all parties follow any expert treatment plans. All individual defendants are sued in both their official and individual capacities. He bases his complaint on the following factual allegations:

### A.   Transfer to K-Dorm

As of January 2020, Warren was housed in O-Dorm, which was an 8-man dorm for veterans. For the prior three years, he has been asking for an intra-dorm bed move away from the drafty center window, which was causing medical issues for him. Defendant Unit Team Manager Amburn refused the transfer. In April 2020, in the midst of the COVID-19 outbreak, Warren was transferred from O-Dorm to K-Dorm, which housed 36 men and increased his risk of exposure to COVID-19. Ms. Amburn transferred him to K-Dorm in retaliation for his many requests to be moved away from the window. Because of his move to K-Dorm, he became ill with and was treated for Lyme Disease and tuberculosis.

On June 19, 2020, Warren filed informal grievances because Ms. Amburn had not moved him back to O-Dorm, even though she promised that she would and all the other inmates who were moved around the same time as him had been returned to O-Dorm. He also filed formal grievances about the situation. Warden Zatecky responded to at least one of those grievances.

### B.   Medical Issues and Response

In May 2020, Warren began experiencing an increase in medical problems, including headaches, tightness in the chest, fatigue, vomiting, bleeding from rectum, respiratory issues, depression, stomach pain, muscle and joint pain, intestinal pain, sleep deprivation, weight loss, urine turning red, stool turning orange, high anxiety, irregular bowel movements, hunger pains,

thirst and dry mouth, night sweats, and lack of appetite. In late May 2020, he had a medical visit with Defendant Nurse Amber in connection with a health-care request in which he complained of multiple problems and asked for a COVID-19 test. Nurse Amber addressed only a skin issue at the visit and refused to address more than one issue, saying that policy limited her to addressing one issue at a time. Warren later learned that no such policy exists. As a result, many of Warren's complaints, including complaints about chest and respiratory pain, went unaddressed.

Several days later, Warren filed an informal grievance that was sent to Defendant Warden Zatecky, in which he asked for a COVID-19 test. No one responded to the grievance.

On June 3, 2020, Warren filed an informal grievance to Defendant Health Services Administrator Gibson about not being provided medical treatment by Defendant Dr. Knieser. Later that day, Warren saw Nurse Amber in connection with another health care request. Again, Nurse Amber would only address one issue—stomach pain—and refused to address the other complaints in the request, including complaints of respiratory issues that were made in the mist of a COVID-19 outbreak.

On June 4, Warren filed formal grievances to Warden Zatecky because he had not received responses to his previous informal grievance. On that day, Warren also filed grievances against Wexford for not testing him for respiratory issues when he was sick and in pain. Warden Zatecky responded to the grievances on July 8, 2020.

On June 8, 2020, Warren filed an emergency grievance against Wexford and the IDOC because they failed to act on another emergency grievance which was related to respiratory issues that might have caused by COVID-19, mold, Lyme disease, and/or tuberculosis. Again, Nurse Amber refused to treat Warren because she claimed that policy required that an inmate could only submit one issue per health care request.

4

On June 8, 2020, Warren saw Dr. Knieser for respiratory and other issues. Dr. Knieser ordered tests (including blood work, an EKG, a test for hepatitis C, and "chromes disease"), but no medication or other treatments were ordered.

Warren had a tuberculosis test on June 12, 2020. On June 16, 2020, He filed an informal grievance against Wexford for failing to follow up to let Warren know whether he tested positive or negative for tuberculosis. Ms. Gibson responded and said that nursing would follow up. He had to wait 27 days before he was retested.

On June 25, 2020, Warren filed a grievance against Wexford for not reading his tuberculosis test in a timely manner. He also submitted a health care request for chest and respiratory pain because it had been 17 days since he saw Dr. Knieser, and he had not been given any pain medication. Warren also notified Ms. Gibson that he had not had any follow-up on getting his tuberculosis test reviewed. He also addressed Wexford staff for not following policies and procedures. Finally, he filed a grievance against Wexford because no one ever read his tuberculosis test. Warden Reagle responded to a grievance about this issue on July 8, 2020. Warren was retested on July 9, 2020.

On July 13, 2020, Warren sent a request to Dr. Knieser in which he asked what the symptoms of mold exposure were because he had headaches, chest tightness, fatigue, and shortness of breath. Ms. Gibson responded and told him to submit a health care request form if he was having symptoms.

Later that day, Warren was awaiting a chest X-ray for respiratory issues at the infirmary when Dr. Knieser and non-defendant Nurse Tia looked at Warren's tuberculosis test and immediately told him he had tuberculosis.

On July 26, 2020, Warren submitted a health care request form asking Dr. Knieser why he was being treated for Lyme Disease and taking Lyme Disease medications. He also told Dr. Knieser that his urine was dark red. Dr. Knieser failed to check Warren for "chromes disease" as he promised he would on June 12, 2020.

On July 27, 2020, Warren submitted a health care request asking for medical ice because powerful tuberculosis medications were making him very thirsty, his urine red, and his stool orange. A non-defendant nurse denied the request.

On August 11, 2020, Warren filed a grievance against the IDOC and Wexford because he tested positive for tuberculosis.

**C.    Conditions in K-Dorm and Response**

In late May 2020, Warren filed an informal grievance to Warden Zatecky and complained about various issues in K-Dorm, including inadequate sanitizers, the presence of only one working sink or 36 men, no heat, a broken exhaust fan, and no access to the outside for social distancing. No one responded to the informal grievance.

On June 4, 2020, Warren also filed a formal grievance to Defendant Lt. McCutcheons because there was mold in the shower areas in K-Dorm and the exhaust fan was not working in the dorm, both of which can cause respiratory issues. Warren learned from another inmate that the mold problem had been going on for several years and that previous grievances had been filed about the issue. Defendant Aaron Smith answered the grievance and promised to power wash the showers, but that was never done. In June 2021, a sergeant had the walls of the showers bleached, but the mold returned in a few days.

On June 19, 2020, Warren again asked Lt. McCutcheons to fix the mold issue in K-Dorm. He responded with "work orders complete." On June 22, Lt. McCutcheons inspected the

mold and told Warren he had work orders in for stainless steel showers, which would cure the mold issue. As of the date Warren filed his complaint, no stainless-steel showers had been installed, and mold continued to grow in the showers.

On July 22, 2020, Lt. McCutcheons inspected the mold in the showers and the inoperative exhaust fan after Warren's multiple complaints. After inspection, Lt. McCutcheons told Warren that he had previously put in work orders for stainless steel showers, which would help cure the mold issue.

### D.    Removal from 2200-Calorie Diet Card

On July 2, 2020, Defendant Nurse Wilson retaliated against Warren for grievances filed when she removed him from his 2200-calorie diet card. He filed a grievance about the situation, and Warden Reagle responded.

On July 26, 2020, Warren submitted a health care request, stating that he was starving and in pain because Nurse Wilson retaliated against him and moved him from a 2200-calorie diet to an 1800-calorie diet. Nurse Wilson would not put Warren back on a 2200-calorie diet.

On September 11, 2020, Warren submitted a health care request to Nurse Wilson to ask why he had been removed from his prescribed diet.

### E.    Claims

Warren sets forth his claims as follows: (1) Wexford violated the Eighth Amendment and was deliberately indifferent to Warren's serious medical needs because it allowed and practiced customs or practices that caused him not to receive proper medical care from Dr. Knieser, Nurse Amber, Ms. Gibson, and Nurse Wilson; (2) Dr. Knieser violated the Eighth Amendment and was deliberately indifferent to Warren's serious medical needs because he failed to properly diagnose and treat Warren's many medical issues, including tuberculosis, COVID-19, Lyme Disease,

headaches, respiratory issues, and more; (3) Nurse Amber violated the Eighth Amendment and was deliberately indifferent to Warren's serious medical needs because she refused to address his medical issues; (4) Ms. Gibson violated the Eighth Amendment and was deliberately indifferent to Warren's serious medical needs because she refused to timely and properly act on his grievances about his health problems; (5) Nurse Wilson violated the Eighth Amendment and was deliberately indifferent to Warren's serious medical needs because she removed him from his prescribed diet on two occasions; (6) Warden Zatecky, Deputy Warden Reagle, Mr. Smith, and Lieutenant McCutcheons violated the Eighth Amendment and were deliberately indifferent to Warren's serious medical needs because they allowed Warren to be retaliated against and to be housed in an unsafe and unsanitary environment, in which Warren was exposed to black mold, tuberculosis, COVID-19, and Lyme Disease; (7) Ms. Amburn violated the Eighth Amendment and was deliberately indifferent to Warren's serious medical needs because she refused to move Warren away from the center window in O-Dorm, moved him to the unsafe K-Dorm, and refused to move him back to the O-Dorm; (8) Ms. Amburn violated the First Amendment when she retaliated against him by refusing to move him away from the center window in O-Dorm, moved him to the unsafe K-Dorm, and refused to move him back to the O-Dorm; and (9) Nurse Wilson violated the First Amendment and retaliated against Warren by removing him from his prescribed diet. Although he did not identify the IDOC as a defendant in the "Defendants" section of his complaint, he also states that the IDOC violated the Eighth Amendment and was deliberately indifferent to his serious medical needs because it allowed him to be retaliated against and continually kept him in an unsafe and unsanitary environment.

**III. Discussion of Claims**

Although a plaintiff need not plead legal theories in a complaint, *see* Fed. R. Civ. P. 8(a), as set forth above, Warren has identified the theories he wishes to pursue against each defendant. Where a *pro se* litigant has expressly stated the legal theories he wishes to pursue, the district court is not required to analyze whether the allegations in the complaint might state a claim under a different legal theory. *See Larry v. Goldsmith*, 799 F. App'x 413, 416 (7th Cir. 2016) (citing *Clancy v. Office of Foreign Assets Control of U.S. Dep't of Treasury*, 559 F.3d 595, 606-07 (7th Cir. 2009)).

**A.  Official-Capacity Claims**

Warren states that he is suing all individual defendants in their official and individual capacities. As to the official-capacity claims, the claims against the State Defendants (Warden Zatecky, Deputy Warden Reagle, Lt. McCutcheons, Mr. Smith, and Ms. Amburn) are all actually claims against their employer, the IDOC. Warren cannot pursue claims for monetary relief against the IDOC under § 1983. *Thomas v. Illinois*, 697 F.3d 612, 613 (7th Cir. 2012) (citing *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 66–70 (1989) (state are not "persons" subject to suit under § 1983). Any claims for money damages against these defendants in their official capacities are **dismissed**.

 Warren may pursue a claim for injunctive relief against an official acting in his official capacity to remedy ongoing constitutional violations. *Marie O. v. Edgar*, 131 F.3d 610, 615 (7th Cir. 1997). The Court takes judicial notice that Deputy Warden Reagle is the current Warden of Pendleton. *See*  https://www.in.gov/idoc/find-a-facility/adult/pendleton-correctional-facility/ (last visited March 30, 2023). Thus, he is the appropriate defendant for any injunctive relief claims against the state defendants, and any official-capacity claims for injunctive relief against Warden

Zatecky, Lieutenant McCutcheons, Mr. Smith, and Ms. Amburn are **dismissed as duplicative**. As discussed in more detail with respect to the individual-capacity claims, below, Warren also alleges that he is being subjected to ongoing unconstitutional conditions (e.g. being denied medical care and being forced to live in an unsanitary environment). He seeks injunctive relief in connection with those allegations. Accordingly, a claim for injunctive relief against Deputy Warden Reagle in his official capacity **shall proceed**.

Warren's official-capacity claims against Dr. Knieser, Nurse Amber, Ms. Gibson, and Nurse Wilson are actually claims against their employer, Wexford. The Court discusses the claims against Wexford, below. Any official-capacity claims against Dr. Knieser, Nurse Amber, Ms. Gibson, and Nurse Wilson are **dismissed as duplicative**.

### B. Individual Capacity-Claims

#### 1. Eighth Amendment Claims

##### a. Medical Claims

Warren alleges that all defendants were deliberately indifferent to his serious medical needs. Because Warren is a convicted prisoner, his medical treatment is evaluated under standards established by the Eighth Amendment's proscription against the imposition of cruel and unusual punishment. *See Helling v. McKinney*, 509 U.S. 25, 31 (1993) ("[T]he treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment."). The Eighth Amendment "protects prisoners from prison conditions that cause the wanton and unnecessary infliction of pain." *Pyles v. Fahim*, 771 F.3d 403, 408 (7th Cir. 2014) (cleaned up). "To determine if the Eighth Amendment has been violated in the prison medical context, [the Court] perform[s] a two-step analysis, first examining whether a plaintiff suffered from an objectively serious medical condition, and then determining whether

the individual defendant was deliberately indifferent to that condition." *Petties v. Carter*, 836 F.3d 772, 727–728 (7th Cir. 2016) (en banc). "A prison official is deliberately indifferent only if he knows of and disregards an excessive risk to inmate health or safety." *Whiting v. Wexford Health Sources, Inc.*, 839 F.3d 658, 662 (7th Cir. 2016) (cleaned up).

### i.  Medical Defendants

Under the standard stated above, Warren has adequately stated Eighth Amendment medical-care claims for damages against Dr. Knieser, Nurse Amber, and Ms. Gibson, all of whom are alleged to have known about his serious medical conditions and to have failed to take appropriate action with respect to Warren's complaints about those conditions. Those claims **shall proceed**. Warren has also adequately stated an Eighth Amendment medical-care claim for damages against Nurse Wilson, who is alleged to have removed him from his prescribed diet without good reason. Those claims **shall proceed**.

As to his claims against Wexford, to prevail on those claims, Warren must plead facts plausibly showing that was deprived of constitutionally adequate medical care as a direct result of a Wexford policy or custom and that Wexford "took the action with conscious disregard for the known or obvious risk of the deprivation." *Dean v. Wexford Health Sources, Inc.*, 18 F.4th 214, 236 (7th Cir. 2021). Under that standard, Warren has adequately stated an Eighth Amendment medical-care claim for damages against Wexford, and that claim **shall proceed**.

To the extent that Warren seeks injunctive relief from Wexford, those claims are **dismissed** because the Court takes judicial notice that Wexford is no longer the medical-care provider for the IDOC and, thus, no longer involved with his care. *See* https://www.centurionmanagedcare.com/newsroom/centurion-to-partner-with-idaho-doc-to-provide-comprehensive-healthcare-services.html (last visited March 30, 2023).

### ii.    State Defendants

Under the standard for Eighth Amendment medical-care claims stated above, Warren has adequately stated claims for damages against Warden Zatecky and Deputy Warden Reagle, both of whom are alleged to have known that Warren was not receiving adequate medical treatment and failed to take steps to ensure he received such treatment. Those claims **shall proceed**.

As to Mr. Smith, the only non-conclusory factual allegation about him is that he responded to Warren's grievance complaining about mold in the showers, which could cause respiratory issues. Similarly, all of Warren's non-conclusory allegations about Lt. McCutcheons relate to the failure to remedy the mold and other problems in K-Dorm, which Warren alleges exacerbated his medical issues. And, as to Ms. Amburn, Warren alleges she refused to move him away from a drafty window, moved him to K-Dorm, and refused to move him back to O-Dorm, all of which caused him to suffer medical consequences. Because these claims do not involve these defendants failing to obtain medical treatment for Warren, they are better understood as conditions-of-confinement claims and analyzed as such below.

### b.   Conditions-of-Confinement Claims

Although Warren states that his Eighth Amendment claims are related to the defendants' deliberate indifference to his serious medical needs, the Court understands that some of those claims—specifically, the claims related to the failure to remedy the mold and other problematic conditions in K-Dorm and the claims related to his placement in K-Dorm—are claims about his conditions of confinement and not the failure to provide medical care. As to those claims, two elements are required to establish a violation of the Eighth Amendment's prohibition against cruel and unusual punishment: (1) an objective showing that the conditions are sufficiently serious—*i.e.*, that they deny the inmate the minimal civilized measure of life's necessities,

creating an excessive risk to the inmate's health and safety; and (2) a subjective showing of a defendant's culpable state of mind. *Isby v. Brown*, 856 F.3d 508, 521 (7th Cir. 2017) (internal citations and quotation omitted).

Warren alleges that Warden Zatecky, Deputy Warden Reagle, Lieutenant McCutcheons, and Mr. Smith knew about unsafe and unsanitary conditions in K-Dorm (including moldy showers, a broken exhaust fan, and inadequate sanitizer and sinks) and failed to take appropriate remedial action. He also alleges that Deputy Warden Reagle knew that Warren was not receiving adequate calories and failed to remedy the situation. These allegations are sufficient to state Eighth Amendment conditions-of-confinement claims for damages against Warden Zatecky, Deputy Warden Reagle, Lieutenant McCutcheons, and Mr. Smith, and those claims **shall proceed**.

Warren as also adequately alleged an Eighth Amendment conditions-of-confinement claim for damages against Ms. Amburn, who is alleged to have refused to move Warren away from a drafty window, moved him to the unsanitary K-Dorm, and refused to move him back to O-Dorm, all of which exposed him to adverse health consequences. Those claims **shall proceed**.

Finally, Warren's claim for damages against Nurse Wilson for depriving him of adequate calories can also be construed as a conditions-of-confinement claim, and his claims against her **shall proceed** on that theory, too.

### 2.   Retaliation Claims

Warren alleges that Ms. Amburn retaliated against him for asking for a bed move by moving him to K-Dorm and refusing to move him back. He alleges that Nurse Wilson retaliated against him for filing grievances by taking away his prescribed 2200 calorie diet card. To state a First Amendment retaliation claim, he must allege that: (1) he engaged in activity protected by

the First Amendment; (2) he suffered a deprivation that would likely deter First Amendment activity; and (3) the protected activity she engaged in was at least a motivating factor for the retaliatory action. *Archer v. Chisholm*, 870 F.3d 603, 618 (7th Cir. 2017). Under this standard, Warren has adequately stated a First Amendment retaliation claim for damages against Ms. Amburn and Nurse Wilson, and those claims **shall proceed**.

### C. Summary

For the reasons state above, the following claims **shall proceed**: (1) claims for injunctive relief against Deputy Warden Reagle in his official capacity; (2) Eighth Amendment medical-care claims for damages against Wexford, Dr. Knieser, Nurse Amber, Ms. Gibson, Nurse Wilson, Warden Zatecky and Deputy Warden Reagle; (3) Eighth Amendment conditions-of-confinement claims for damages against Warden Zatecky, Deputy Warden Reagle, Mr. Smith, Lt. McCutcheons, Ms. Amburn, and Nurse Wilson; and (4) First Amendment retaliation claims against Ms. Amburn and Nurse Wilson. This summary of claims includes all of the viable claims identified by the Court. All other claims have been dismissed. If Warren believes that additional claims were alleged in the complaint, but not identified by the Court, he shall have **April 28, 2023,** in which to identify those claims.

### IV. Service of Process

The **clerk is directed** pursuant to *Fed. R. Civ. P.* 4(c)(3) to issue process to all defendants in the manner specified by Rule 4(d). Process shall consist of the complaint, dkt. [2], applicable forms (Notice of Lawsuit and Request for Waiver of Service of Summons and Waiver of Service of Summons), and this Order.

The **clerk is directed** to serve the Indiana Department of Correction employees electronically.

The **clerk is directed** to serve Wexford of Indiana, LLC, electronically.

Defendants Martial Knieser, Nurse Amber, Lisa Gibson, and Sheri Wilson are identified as employees of Wexford of Indiana, LLC. Wexford is ORDERED to provide the full name and last known home address of any defendant who does not waive service if they have such information. This information may be provided to the Court informally or may be filed ex parte.

Nothing in this Order prohibits the filing of a proper motion pursuant to Rule 12 of the Federal Rules of Civil Procedure.

**IT IS SO ORDERED.**

Date:

Hon. Tanya Walton Pratt, Chief Judge
United States District Court
Southern District of Indiana

Distribution:

LARRY WARREN
230853
PENDLETON - CF
PENDLETON CORRECTIONAL FACILITY
Electronic Service Participant – Court Only

Electronic service to Indiana Department of Correction:
        Dushan Zatecky
        Dennis Reagle
        Lieutenant McCutcheons
        Aaron Smith
        Sarah Peckham Amburn
        (All at Pendleton Correctional Facility)

Electronic service to Wexford of Indiana, LLC

Martial Knieser, MD
Pendleton Correctional Facility
4490 W. Reformatory Rd.
Pendleton, IN 46064

Nurse Amber
Pendleton Correctional Facility
4490 W. Reformatory Rd.
Pendleton, IN 46064

15

Lisa Gibson
Pendleton Correctional Facility
4490 W. Reformatory Rd.
Pendleton, IN 46064

Sheri Wilson
Pendleton Correctional Facility
4490 W. Reformatory Rd.
Pendleton, IN 46064